Josephine Linker Hart, Justice, dissenting. I write separately to criticize the oppression of what is euphemistically referred to as “alternative dispute resolution.” Whether it is mediation or, as in the case before us, arbitration, 'it is eroding the cornerstone of our democracy—judicial process. Inexplicably, alternative dispute resolution is a favorite of Congress and the Supreme Court of the United States. See, e.g., AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 345, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (arbitration is desirable because it “reduc[es] the cost and increas[es] the speed” of dispute resolution). In finest ovine fashion, this court has echoed the Supreme Court’s conclusions, asserting, for example, in Hart v. McChristian, 344 Ark. 656, 42 S.W.3d 552 (2001), that “this court has oft recognized that as a matter of public policy, -arbitration is ‘strongly favored.’” Further, this court has stated that “arbitration is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion.” Id. In my view, alternatives to judicial resolution of disputes should be anathema to every member of the judiciary. First, the case before us should forever dispel the notion that arbitration is “less expensive.” In this $7,000 case, the petitioner engendered $135,000 in legal fees, which were shifted to the respondent. Under Arkansas law, each side would bear its own fees in a tort case. It should also be noted that the arbitrator the petitioner selected billed at $350 per hour. In circuit court, an entire case would be heard for only the filing fee, currently just over $200. Second, according to the majority, the arbitrator’s decision, pursuant to the Federal Arbitration Act and the United States Supreme Court decision in Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), is all but immune from judicial review. I am mindful that under 9 U.S.C. § 10, a reviewing court can only vacate an arbitrator’s judgment: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and | inmaterial to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. While the grounds for overturning an arbitrator’s decision are limited, they are present here. In this case, the arbitrator completely ignored the General Assembly’s clearly stated public policy favoring whistle blowers. The majority has not justified why it has decided to immunize the arbitrator’s decision to ignore Arkansas law; certainly a circuit court does not enjoy the same latitude. Finally, the results achieved by alternative dispute resolution, whether inexpensive or not, speedy or not, or flexible or not, are not guided by the same ethos as our courts of law, which is the concept of justice. If alternative dispute resolution was not skewed in favor of the powerful, it would not be a fixture of the ubiquitous adhesion contracts that we are confronted with on a daily basis. We are losing one of the cornerstones of our democracy—courts of law. No one said it better than Harper Lee in her iconic novel, To Kill a Mockingbird. Thomas Jefferson once said that “All men are created equal” ... We know all men are not created equal in the sense some people would have us believe— some people are smarter than others, some people have more opportunity because they are born with it, some men make more money than others, some ladies make better cakes than others— some people are born gifted beyond the normal scope of most men. But there is one way in the country in which all men are created equal—there is one human institution that makes a pauper the equal of a Rockefeller, the stupid man the equal of an Einstein, and the ignorant man the equal of any college president. That institution, gentleman, is a court. It can be the Supreme Court of the United States, or the humblest J.P. court in the land, or this hon-. orable court, which you serve. Our courts have their faults, as does any human institution, but in this country our courts are the great levelers, and in our courts all men are created equal. InHarper Lee, To Kill a Mockingbird (Grand Central Publishing, 2010), 273-74. Forgoing justice in favor of expediency— for some—is too high a price to pay. I dissent.